**DEREK SMITH LAW GROUP, PLLC**
SUSAN KEESLER, ESQ.
Attorney ID No. 312977
1835 Market Street, Suite 2950
Philadelphia, PA 19103
(215) 391-4790
susan@dereksmithlaw.com
*Attorneys for Plaintiff*

2019 DEC 15 P 1: 15

USDC-EDPA
REC'D CLERK

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICKY SAVAGE, | :       19     6026 |
| Plaintiff, | : Civil Action No. |
| v. | : **COMPLAINT FOR** |
| | : **DECLARATORY JUDGMENT,** |
| TEMPLE UNIVERSITY- OF THE | : **INJUNCTIVE RELIEF** *and* |
| COMMONWEALTH SYSTEM OF HIGHER | : **DAMAGES** |
| EDUCATION; TEMPLE UNIVERSITY- OF THE | : |
| COMMONWEALTH SYSTEM OF HIGHER | : |
| EDUCATION d/b/a TEMPLE UNIVERSITY; | : **JURY TRIAL DEMANDED** |
| JOSEPH MONAHAN (In His Individual and | : |
| Official Capacity); KEVIN CASEY (In His Individual | : |
| and Official Capacity); BRENDAN MULLER (In His | : |
| Individual and Official Capacity); and FELISHA | : |
| BROWN (In Her Individual and Official Capacity), | : |
| Defendants. | : |

## NATURE OF THE ACTION

1. This is an action for relief from violations of Title VII of the Civil Rights Act of 1964, 42
   U.S.C. §§ 2000e et seq., as amended ("Title VII"), and Section 1981 of the Civil Rights
   Act of 1866, 42 U.S.C. § 1981 ("Section 1981").

2. Plaintiff Ricky Savage seeks declaratory and injunctive relief, actual damages,
   compensatory damages, reinstatement, punitive damages, pre- and post-judgment
   interest, reasonable attorneys' fees and costs of suit to redress the injuries he has suffered

1

as a result being discriminated and retaliated against by Defendants on the basis of his

race, religion and participation in protected activity.

## PARTIES

3. Plaintiff Ricky Savage (hereinafter referred to as "Plaintiff"), is an individual Black male

   Muslim, who practices the Islam religion and is a resident of the City of Philadelphia,

   within the Commonwealth of Pennsylvania.

4. Defendant TEMPLE UNIVERSITY-OF THE COMMONWEALTH SYSTEM OF

   HIGHER EDUCATION is a domestic non-profit corporation duly existing under the

   laws of the Commonwealth of Pennsylvania.

5. Defendant TEMPLE UNIVERSITY-OF THE COMMONWEALTH SYSTEM OF

   HIGHER EDUCATION operates its headquarters at 1801 N. Broad Street, Philadelphia,

   PA.

6. Defendant TEMPLE UNIVERSITY-OF THE COMMONWEALTH SYSTEM OF

   HIGHER EDUCATION d/b/a TEMPLE UNIVERSITY is headquartered at 1801 N.

   Broad Street, Philadelphia, PA 19122.

7. Defendants TEMPLE UNIVERSITY-OF THE COMMONWEALTH SYSTEM OF

   HIGHER EDUCATION and TEMPLE UNIVERSITY-OF THE COMMONWEALTH

   SYSTEM OF HIGHER EDUCATION d/b/a TEMPLE UNIVERSITY (hereinafter

   collectively referred to as Defendants and "TEMPLE") are joint and single employers of

   Plaintiff.

8. At all times material, Defendant JOSEPH MONAHAN (hereinafter referred to as

   "MONAHAN") is an individual Caucasian male who was, and upon information and

belief, still is an employee of Defendant TEMPLE as the Associate Vice President of Facilities Operations and Operations.

9. At all times material, Defendant MONAHAN held supervisory authority over Plaintiff.

10. At all times material, Defendant MONAHAN held hiring and firing authority over Plaintiff.

11. At all times material Defendant KEVIN CASEY (hereinafter referred to as "CASEY") is an individual Caucasian male who was, and upon information and belief, still is an employee of Defendant TEMPLE as the Director of Operations.

12. At all times material, Defendant CASEY held supervisory authority over Plaintiff.

13. At all times material, Defendant CASEY held hiring and firing authority over Plaintiff.

14. At all times material, Defendant BRENDAN MULLER (hereinafter referred to as "MULLER") is an individual Caucasian male who was, and upon information and belief, still is an employee of Defendant TEMPLE as the Assistant Director of Operations and Maintenance.

15. At all times material, Defendant MULLER held supervisory authority over Plaintiff.

16. At all times material, Defendant MULLER had hiring and firing authority over Plaintiff.

17. At all times material, Defendant FELISHA BROWN (hereinafter referred to as "BROWN") is an individual female who was, and upon information and belief, still is an employee of Defendant TEMPLE as an Employee Relations Manager.

18. At all times material, Defendant BROWN held supervisory authority over Plaintiff.

19. At all times material, Defendant BROWN had hiring and firing authority over Plaintiff.

20. At all times material, Defendants were "employers" and Plaintiff was an "employee" within the meaning of the applicable law.

21. Defendants accepted, agreed, adopted, acquiesced, and/or otherwise was bound by the actions, omissions, and conduct of its owners, managers, supervisors, employees, and agents.

22. Defendants are being sued in their individual and official capacities.

23. Defendants systematically and willfully violated workers' rights under Title VII and Section 1981.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

24. Around January 23, 2019, Plaintiff timely filed a charge of retaliation with the U.S. Equal Employment Opportunity Commission ("EEOC"), the Pennsylvania Human Relations Commission ("PHRC"), and the Philadelphia Commission on Human Relations ("PCHR") alleging violations of Title VII, the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963 ("PHRA"), and the Philadelphia Fair Practices Ordinance, § 9-1100 et. seq ("PFPO").

25. Plaintiff by and through his attorney requested, on both his Charge of Discrimination Cover Sheet as well as in the body of the email submission of the Charge, that his Charge be simultaneously filed with the PHRC, PCHR, and any other state or local agency with whom the EEOC has a work sharing agreement.

26. The continuing acts of employment discrimination referenced in Plaintiff's Charge of discrimination were committed by the following parties: (1) Temple University- Of The Commonwealth System of Higher Education; (2) Temple University- Of The Commonwealth System of Higher Education d/b/a Temple University; (3) Joseph Monahan; (4) Kevin Casey; (5) Brendan Muller; and (6) Felisha Brown.

27. Around September 16, 2019, the EEOC issued Plaintiff a Notice of Right to Sue Within 90 Days.

28. Plaintiff has timely filed this action and has complied with all administrative prerequisites to bring this lawsuit.

29. Plaintiff's PHRA claims are still pending before the PHRC because less than one year has elapsed since PHRC assumed jurisdiction over Plaintiff's Charge.

30. Plaintiff's PFPO claims are still pending before the PCHR because less than one year has elapsed since PCHR assumed jurisdiction over Plaintiff's Charge.

31. Plaintiff's PHRA and PFPO claims will not ripen until after January 23, 2020 and will seek leave to amend this complaint to assert his PHRA and PFPO claims against the parties referenced in ¶ 26 above. See Federal R. Civ. P. 159a) (Courts "freely give leave to amend when justice so requires"), 15(c) (Amendments "relate back" to the date of the original pleading), and 15(d) (Plaintiff may "serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented").

## **JURISDICTION AND VENUE**

32. This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 because it involves questions of federal law under Title VII and Section 1981.

33. Venue in this judicial district is proper pursuant to 28 U.S.C §1391(b) and 42 U.S.C. § 2000e-5(f)(3) because a substantial part of the acts or omissions giving rise to Plaintiff's claims occurred in Philadelphia, Pennsylvania, Philadelphia County within the Eastern District of Pennsylvania, and Defendants are subjected to personal jurisdiction here.

34. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## **MATERIAL FACTS**

35. Around June 4, 2018, Plaintiff was hired as an Electrical Supervisor for Defendant TEMPLE'S Health Sciences Division.

36. Around June 7, 2018, Plaintiff spoke to Defendant CASEY. During that conversation, Plaintiff informed Defendant CASEY that he was Muslim and that he needed to attend services at his Mosque on Friday, June 8, 2018.

37. Plaintiff explained that he was willing to come into work early, stay late, or otherwise make up the time that he missed to attend his religious services.

38. The religious services on Friday afternoons would take Plaintiff out of work for approximately three to four hours, including travel time.

39. Defendant CASEY told Plaintiff that Defendant CASEY needed to check with his supervisor, Defendant MONAHAN, to find out if Defendants could accommodate Plaintiff's request.

40. Defendant CASEY permitted Plaintiff to attend the services on Friday, June 8, 2018.

41. Around the following Monday, Plaintiff again approached Defendant CASEY to see if his request to attend religious services on Fridays had been approved by his supervisor.

42. Defendant CASEY stated that he had not received a definitive answer as to whether Plaintiff was going to be accommodated and permitted to leave work to attend the religious services.

43. Around June 14, 2018, Defendant CASEY called Plaintiff into his office and explained that Plaintiff's request had been denied and that he was not permitted to leave work to attend religious services on Fridays as requested.

44. Plaintiff at the time presented a six-page letter to Defendant CASEY requesting to attend the services and further stated that he would be willing to work on Christmas and recognized holidays for religions other than Islam so that his co-workers could have time off to observe their holidays as well. The letter also included citations to regulations from Temple's policies, the Commonwealth of Pennsylvania, and the U.S. EEOC pertaining to religious accommodation and employment law.

45. Around this time, it was the Muslim holiday of Ramadan. There are only two Muslim religious holidays annually that require Plaintiff to go to the Mosque or miss work, in addition to the Friday services that he requested to attend.

46. In that same meeting, Plaintiff asked Defendant CASEY if he could attend a religious holiday service at his Mosque that Friday, June 15, 2018 for the Ramadan holiday.

47. Defendant CASEY told Plaintiff he would forward this letter to his supervisor, Defendant MONAHAN.

48. Later that same day around June 14, 2018, Defendant CASEY contacted Plaintiff and told him that his request was still denied and that Defendant MONAHAN was denying Plaintiff permission to have time off to observe any religious services, which devastated Plaintiff.

49. Plaintiff suggested that he use one of his personal days to attend the religious service for Ramadan on July 15, 2018, and Defendant CASEY approved this request.

50. Around June 15, 2018 Plaintiff attended the religious services for the Ramadan holiday, as approved by Defendant CASEY.

51. Plaintiff used his personal time, which Defendants docked from his time and was reflected in Plaintiff's personnel records around the following Monday.

52. Plaintiff returned to work around Monday, June 18, 2018. When Plaintiff returned, he was informed that despite writing a six-page letter requesting an accommodation to attend his religious services, the request was patently denied by Defendants.

53. Around June 19, 2018, Defendant MULLER called Plaintiff into his office and then terminated Plaintiff because he took Friday, June 15, 2018 off "without permission."

54. However, Plaintiff did in fact have permission from Defendant CASEY, and Plaintiff conveyed that information to Defendant MULLER.

55. In response, Defendant MULLER expressed that he was not aware of the fact that Plaintiff obtained permission from Defendant CASEY to take personal time to observe the holiday.

56. Defendant MULLER told Plaintiff that he would call Defendant MONAHAN to inform Defendant MONAHAN that Plaintiff had permission.

57. Defendant MULLER did call Defendant MONAHAN, and then told Plaintiff that Defendant MONAHAN was upholding the termination.

58. Defendant MONAHAN was the same supervisor who patently denied Plaintiff's request for accommodation to observe his religious services.

59. The termination of Plaintiff based on missing work was pretext for religious discrimination and the fact that Defendants did not want to accommodate Plaintiff's requests.

8

60. Plaintiff protested and stated that he had taken personal time to attend the religious services and that his personal time off had been pre-approved and accounted for in his time records.

61. Plaintiff then contacted Defendant BROWN and informed her that he felt the termination was unlawful discrimination based on his request for a religious accommodation.

62. Defendant BROWN failed to investigate or take appropriate remedial action.

63. In words and substance, Defendant BROWN told Plaintiff that she was aware of his request for a religious accommodation, but that the accommodation had been denied.

64. Further, Defendant BROWN insisted that Plaintiff had called out of work and was terminated for calling out.

65. Plaintiff again stated that he had personal time to use and that he had approval from Defendant CASEY to use that time and attend services for his religious holiday.

66. Nevertheless, Defendants unlawfully upheld the unlawful termination of Plaintiff.

67. Plaintiff then went to Defendants' internal Equal Employment Opportunity office to make a report when Defendant's Human Resources refused to conduct an investigation or to take appropriate remedial measures.

68. Defendant's Equal Employment Opportunity Office sent Plaintiff a letter, dated July 13, 2018, stating that they were closing the investigation, and copied the closing letter to Plaintiff's supervisors for the purposes of continued conversation with Plaintiff's supervisors and human resources to address Plaintiff's concerns.

69. To date, Plaintiff has still never been contacted by Defendants since he received the letter dated July 13, 2018.

70. Defendants, at all times, failed to properly investigate or to take any remedial measures related to Plaintiff's multiple complaints of discrimination, harassment and hostile work environment.

71. Defendants terminated Plaintiff because of his race, religion and participation in protected activity.

72. Defendants discriminated against Plaintiff in the terms and conditions of their employment because of Plaintiff's religious and race characteristics. Plaintiff also makes claims of intersectional discrimination where Defendants discriminated against Plaintiff based on his belief in a religion tied to a particular race. Title VII prohibits discrimination not just because of one protected trait (e.g., race), but also because of the intersection of two or more protected bases (e.g., race and religion). For example, Title VII prohibits discrimination against African American women even if the employer does not discriminate against White women or African American men. See Jeffries v. Harris County Comty. Action Comm'n, 615 F.2d 1025, 1032-34 (5th Cir. 1980) ("we hold that when a Title VII plaintiff alleges that an employer discriminates against black females, the fact that black males and white females are not subject to discrimination is irrelevant"). Likewise, and by way of further example, Title VII protects Asian American women from discrimination based on stereotypes and assumptions about them "even in the absence of discrimination against Asian American men or White women." Lam v. University of Hawaii, 40 F.3d 1551, 1561-62 (9th Cir. 1994) (holding lower court erred when it treated the claim of an Asian woman in terms of race or sex separately; lower court should have considered whether discrimination occurred because of the plaintiff's combined race and sex). By way of further example, the law also prohibits individuals from being subjected to discrimination because of the intersection of their race and a trait

10

covered by another EEO statute – e.g., race and disability. See Peter Blanck et al., The
Emerging Workforce Case 2:19-cv-03326-JHS Document 1 Filed 07/29/19 Page 59 of 97
60 of Entrepreneurs with Disabilities: Preliminary Study of Entrepreneurship in Iowa, 85
Iowa L. Rev. 1583 n.157 (2000) (African American women with disabilities
disproportionately disadvantaged in employment opportunities).

73. Defendants further refused to engage in the interactive process and give Plaintiff any reasonable
accommodation.

74. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded,
victimized, embarrassed and emotionally distressed.

75. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will
continue to suffer the loss of income, the loss of salary, bonuses, benefits and other
compensation which such employment entails, and Plaintiff also suffered future
pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of
enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced
severe emotional and physical distress.

76. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full
knowledge of the law, Plaintiff demands Punitive Damages as against all the Defendants,
jointly and severally.

77. The above are just some of the examples of unlawful discrimination and retaliation to
which the Defendants subjected the Plaintiff.  Upon information and belief, the
discrimination and retaliation will continue after the date of this complaint and Plaintiff
hereby makes a claim for all continuing future harassment and retaliation.

11

adjudication and declaration that Defendants' conduct as set forth herein is in violation of Title

VII; and (5) all additional general and equitable relief to which Plaintiff is entitled

## COUNT II
### TITLE VII HOSTILE WORK ENVIRONMENT
### 42 U.S.C. § 2000e-2
### (Against Corporate Defendants Only)

99. Plaintiff Ricky Savage hereby incorporates by reference each and every allegation made
in the above paragraphs of this complaint.

100.    Title VII also prohibits hostile work environment harassment, defined as
unwanted comments or conduct regarding the plaintiff's protected characteristics that
have the purpose or effect of unreasonably interfering with the terms and conditions of
the plaintiff's employment. Harris v. Forklift Systems, 510 U.S. 17, 21 (1993).

101.    An employer is strictly liable for supervisor harassment that "culminates in a
tangible employment action, such as discharge, demotion, or undesirable reassignment."
Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998).

102.    Respondeat superior liability for the acts of non-supervisory employees exists
where "the defendant knew or should have known of the harassment and failed to take
prompt remedial action. Andrews v. city of Philadelphia, 895 F.2d 1469, 1486 (3d Cir.
1990).

103.    Employer liability for co-worker harassment also exists where "the employer
failed to provide a reasonable avenue for complaint." Huston v. Procter & Gamble Paper
Prods. Corp., 568 F.3d 100, 105 (3d Cir. 2009).

104.    The Third Circuit has held that the retaliation provision of Title VII "can be
offended by harassment that is severe or pervasive enough to create a hostile work
environment." Jensen v. Potter, 435 F.3d 444, 446 (3d Cir. 2006).

15

105.　　　Here, Defendant's conduct occurred because of Plaintiff's legally protected
characteristics and was severe or pervasive enough to make a reasonable person of the
same legally protected classes believe that the conditions of employment were altered and
that the working environment was intimidating, hostile, or abusive.

106.　　　The discriminatory conduct directly refers to Plaintiff's race and religion.

107.　　　Plaintiff's supervisors had the authority to control Plaintiff's work environment,
and they abused that authority to create a hostile work environment.

108.　　　Harassing conduct filled the environment of Plaintiff's work area.

109.　　　Defendants knew that the harassing conduct filled Plaintiff's work environment.

110.　　　Harassing conduct occurred daily.

111.　　　Harassing conduct caused Plaintiff to sustain severe emotional distress resulting
in physical illness and serious psychological sequelae.

112.　　　Plaintiff subjectively regarded the harassing conduct as unwelcome and unwanted
and objectively opposed the conduct.

113.　　　The conduct was both severe and pervasive.

114.　　　The conduct was emotionally damaging and humiliating.

115.　　　The conduct unreasonably interfered with Plaintiff's work performance.

116.　　　The conduct was so extreme that it resulted in material changes to the terms and
conditions of Plaintiff's employment.

117.　　　Defendants provided a futile avenue for complaint.

118.　　　Defendants retaliated against Plaintiff for his complaints.

119.　　　Defendants acted upon a continuing course of conduct.

120.     As a result of the Defendants' violations of Title VII, Plaintiff has suffered

damages including but not limited to: past and future lost wages, pain and suffering,

inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress,

reputational harm, diminishment of career opportunities, and other harm, both tangible

and intangible.

**WHEREFORE,** Plaintiff demands judgment against Defendants and prays for the following

relief: (1) an award of compensatory damages in an amount consistent with Title VII; (2) an

award of reasonable attorneys' fees and costs of this action in accordance with Title VII; (3) an

aware of pre-and post-judgment interest and court costs as further allowed by law; (4) an

adjudication and declaration that Defendants' conduct as set forth herein is in violation of Title

VII; and (5) all additional general and equitable relief to which Plaintiff is entitled

### COUNT III
### TITLE VII RETALIATION
### 42 U.S.C. § 2000e-3
### (Against Corporate Defendants Only)

121.     Plaintiff Ricky Savage hereby incorporates by reference each and every allegation

made in the above paragraphs of this complaint.

122.     Title VII protects employees from retaliation for attempting to exercise their

rights under the Act:

> 42 U.S.C. § 2000e-3. Other unlawful employment practices
>
> (a) Discrimination for making charges, testifying, assisting, or
> participating in enforcement proceedings. It shall be an unlawful
> employment practice for an employer to discriminate against any
> of his employees . . . because [she] has opposed any practice made
> an unlawful employment practice by this subchapter, or because
> [she] has made a charge, testified, assisted, or participated in any
> manner in an investigation, proceeding, or hearing under this
> subchapter.

123.    The Supreme Court in <u>Burlington v. N. & S.F. Ry. V. White</u>, 548 U.S. 53, 68
(2006) held that a cause of action for retaliation under Title VII lies whenever the
employer responds to protected activity in such a way that "might have dissuaded a
reasonable worker from making or supporting a charge of discrimination."

124.    Informal complaints and protests can constitute protected activity under the
"opposition" clause of 42 U.S.C. § 2000e-3(a). <u>Moore v. City of Philadelphia</u>, 461 F.3d
331, 343 (3d Cir. 2006) ("Opposition to discrimination can take the form of informal
protests of discriminatory employment practices, including making complaints to
management.").

125.    "[A] plaintiff need not prove the merits of the underlying discrimination
complaint, but only that 'he was acting under a good faith, reasonable belief that a
violation existed.'" <u>Aman v. Cort Furniture Rental Corp.</u>, 85 F.3d 1074, 1085 (3d Cir.
1996); <u>Griffiths v. CIGNA Corp.</u>, 988 F.2d 457, 468 (3d Cir. 1993); <u>Sumner v. United
States Postal Service</u>, 899 F.2d 203, 209 (2d Cir. 1990), <u>overruled on other grounds by
Miller v. CIGNA Corp.</u>, 47 F.3d 586 (3d Cir.1995).

126.    An employee need not be a member of a protected class to be subject to
actionable retaliation under Title VII. <u>See Moore,</u> 461 F.3d at 342 ("Title VII's
whistleblower protection is not limited to those who blow the whistle on their own
mistreatment or on the mistreatment of their own race, sex, or other protected class.")

127.    Here, the Defendants discriminated against Plaintiff because of his protected
activity under Title VII.

128.    Plaintiff acted under a reasonable, good faith belief that his right to be free from
discrimination on the basis of his race and religion was violated.

129.     Plaintiff was subjected to materially adverse actions at the time or after the protected conduct took place.

130.     There was a causal connection between the Defendants' materially adverse actions and Plaintiff's protected activity.

131.     Defendants' actions were "materially adverse" because they were serious enough to discourage a reasonable worker from engaging in protected activity.

132.     Defendants acted upon a continuing course of conduct.

133.     Plaintiff will rely on a broad array of evidence to demonstrate a causal link between their protected activity and the Defendants' actions taken against him, such as the unusually suggestive proximity in time between events, as well as Defendants' antagonism and change in demeanor toward Plaintiff after Defendant became aware of Plaintiff's protected activity.

134.     As a result of the Defendants' violations of Title VII, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**WHEREFORE,** Plaintiff demands judgment against Defendants and prays for the following relief: (1) an award of compensatory damages in an amount consistent with Title VII; (2) an award of reasonable attorneys' fees and costs of this action in accordance with Title VII; (3) an aware of pre-and post-judgment interest and court costs as further allowed by law; (4) an adjudication and declaration that Defendants' conduct as set forth herein is in violation of Title VII; and (5) all additional general and equitable relief to which Plaintiff is entitled.

## COUNT IV
## SECTION 1981 DISPARATE TREATMENT
## 42 U.S.C. § 1981
## (against all Defendants)

135.    Plaintiff Ricky Savage hereby incorporates by reference each and every allegation made in the above paragraphs of this complaint.

136.    Section 1981 prohibits race discrimination in the making and enforcing of contact. 42 U.S.C. §1981.

137.    42 U.S.C. §1981 states in relevant part as follows:

    a.    "Statement of equal rights All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

    b.    "Make and enforce contracts defined for purposes of this section, includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

138.    The Third Circuit has stated that "a wide panoply of adverse employment actions may be the basis of employment discrimination suits under Title VII claims interchangeably with respect to adverse employment actions." See, e.g., Barnes v. Nationwide Mut. Ins. Co., 598 Fed. Appx. 86, 90 (3d Cir, 2015); Storey v. Burns Int'l Sec. Servs., 390 F.3d 760, 764 (3d Cir. 2004) (a Title VII case); Thompson v. City of Waco 764 F.3d 500, 503 (5th Cir. 2014) (a Section 1981 case).

139.     Under Section 1981, both employers and individual employees can be liable for discrimination in employment. See Cardenas v. Massey, 269 F.3d 251, 268 (3d Cir. 2001) ("Although claims against individual supervisors are not permitted under Title VII, this court has found individual liability under § 1981 when [the defendants] intentionally cause an infringement of rights protected by Section 1981, regardless of whether the [employer] may also be held liable.") Al-Khazraji v. Saint Francis College, 784 F.2d 505, 518 (3d Cir. 1986 ("employees of a corporation may become personally liable when they intentionally cause an infringement of rights protected by Section 1981, regardless of whether the corporation may also be held liable.")

140.     Defendants violated Section 1981 by intentionally discriminating against Plaintiff in a serious tangible way with respect to his compensation, terms, conditions, or privileges of employment.

141.     Plaintiff's race characteristics were a determinative or motivating factor in Defendants' employment actions.

142.     Defendants cannot show any legitimate nondiscriminatory reason for their employment practices and any reasons proffered by the Defendant for their actions against Plaintiff is pretextual and can readily be disbelieved.

143.     Plaintiff's protected status played a motivating part in the Defendants' decisions even if other factors may have also motivated Defendants' actions against Plaintiff.

144.     Defendants acted with the intent to discriminate.

145.     Defendants acted upon a continuing course of conduct.

21

146.    Defendants acted with malice or reckless indifference to Plaintiff's federally protected rights and as a result there should be an award of punitive damages against Defendants.

147.    As a result of Defendants' violations of Section 1981, Plaintiff has suffered damages including but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendants and prays for the following relief: (1) actual damages; (2) compensatory damages in an amount consistent with Section 1981; (3) an award of reasonable attorneys' fees and costs of this action in accordance with Section 1981; (4) an award of pre- and post-judgment interest and court costs as further allowed by law; (5) an adjudication and declaration that the City's conduct as set forth herein is in violation of Section 1981; and (6) punitive damages in accordance with Section 1981; (7) front pay in accordance with Section 1981; (8) all additional general and equitable relief to which Plaintiff is entitled.

### COUNT V
### SECTION 1981 HOSTILE WORK ENVIRONMENT
### 42 U.S.C. § 1981
### (against all Defendants)

148.    Plaintiff Ricky Savage hereby incorporates by reference each and every allegation made in the above paragraphs of this complaint.

149.    The standards for a hostile work environment clam are identical under Title VII and Section 1981. See, e.g., Verdin v. Weeks Marine Inc., 124 Fed. Appx. 92, 95 (3d Cir. 2005)("Regarding [Plaintiff's hostile work environment claim, the same standard used

22

under Title VII applies under Section 1981."); <u>Ocasio v. Leigh Valley Family Health</u>

<u>Center</u>, 92 Fed. Appx 876, 879-80 (3d Cir. 2004)("As amended by the 1991 Civil Rights

Act, § 1981 now encompasses hostile work environment claims, and we apply the same

standards as in a similar Title VII claim.").

150.      While the standards of liability are identical under Title VII and Section 1981,

there is a major difference in the coverage of the two provisions: under Title VII, only

employers can be liable for discrimination in employment, but under Section 1981,

individuals, including other employees, can be liable for racial discrimination against an

employee. See <u>Cardenas</u>, 269 F.3d at 268; <u>Al-Khazarji</u>, F.2d at 518.

151.      Defendants subjected Plaintiff to harassment motivated by Plaintiff's race

characteristics.

152.      Defendants' conduct was not welcomed by Plaintiff.

153.      Defendants' conduct was so severe and/or pervasive that a reasonable person in

Plaintiff's positions would find the work environment to be hostile or abusive.

154.      Plaintiff believed his work environment was hostile and abusive as a result of

Defendants' conduct.

155.      As a result of the hostile work environment, Plaintiff suffered a "tangible

employment action" defined as a significant change in employment status, failure to

promote, reassignment with significantly different responsibilities, and/or a decision

causing a significant change in benefits.

156.      Defendants failed to exercise reasonable care to prevent racial harassment in the

workplace by failing to establish an explicit policy against harassment in the workplace

on the basis of race, failing to fully communicate the policy to its employees, failing to

23

provide a reasonable way for Plaintiff to make a claim of harassment to higher

management, and failing to take reasonable steps to promptly correct the harassing

behavior raised by Plaintiff.

157.    Defendants acted upon a continuing course of conduct.

158.    As a result of Defendants' violations of Section 1981, Plaintiff has suffered

damages including but not limited to: past and future lost wages, pain and suffering,

inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress,

reputational harm, diminishment of career opportunities, and other harm, both tangible

and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendants and prays for the following

relief: (1) actual damages; (2) compensatory damages in an amount consistent with Section

1981; (3) an award of reasonable attorneys' fees and costs of this action in accordance with

Section 1981; (4) an award of pre- and post-judgment interest and court costs as further allowed

by law; (5) an adjudication and declaration that the City's conduct as set forth herein is in

violation of Section 1981; and (6) punitive damages in accordance with Section 1981; (7) front

pay in accordance with Section 1981; (8) all additional general and equitable relief to which

Plaintiff is entitled.

### COUNT VI
### SECTION 1981 RETALIATION
### 42 U.S.C. § 1981
### (against all Defendants)

159.    Plaintiff Ricky Savage hereby incorporates by reference each and every allegation

made in the above paragraphs of this complaint.

24

160.     The Supreme Court has held that retaliation claims are cognizable under Section

1981 despite the absence of specific statutory language. CBOCS West, Inc. v.

Humphries, 553 U.S. 442 (2008).

161.     The Third Circuit has indicated that the legal standards for a retaliation claim

under Section 1981 are generally the same as those applicable to a Title VII retaliation

claim. See Cardenas, 269 F.3d at 263 ("[T]o establish a prima facie retaliation claim

under title VII [or] § 1981 … , [a Plaintiff] must show: (1) that he engaged in a protected

activity; (2) that he suffered an adverse employment action; and (3) that there was a

causal connection between the protected activity and the adverse employment action");

Khair v. Campbell Soup Co., 893 F. Supp. 316, 335-36 (D.N.J. 1995)(noting that with

respect to retaliation claims, "The Civil Rights Act of 19991 extended § 1981 to the

reaches of Title VII").

162.     The most common activities protected from retaliation under Section 1981 and

Title VII are: (1) opposing unlawful discrimination; (2) making a charge of employment

discrimination; (3) testifying, assisting or participating in any manner in an investigation,

proceeding or hearing under Section 1981. See Robinson v. City of Pittsburgh, 120 F.3d

1286, 1299 (3d Cir. 1997) (filing discrimination complaint constitutes protected activity),

overruled on other grounds by Burlington N. & S.F. Ry. Co. v. White, 126 S. Ct. 2405

(2006); Kachmar v. Sungard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1997)

(advocating equal treatment was protected activity); Aman v. Cort Furniture, 85 F.3d

1074, 1085 (3d Cir. 1989) (under Title VII's anti-retaliation provisions "a Plaintiff need

not prove the merits of the underlying discrimination complaint, but only that 'he was

acting under a good faith, reasonable belief that a violation existed;'"); Griffiths v.

CIGNA Corp., 988 F.2d 457, 468 (3d Cir. 1993); Sumner v. United Stated Postal Service, 899 F.2d 203, 209 (2d Cir. 1990), overruled on other grounds by Milner v. CIGNA Corp., 47 F,3e 58 (3d Cir. 1995).

163.     Here, Defendants discriminated against Plaintiff because of his protected activity under Section 1981.

164.     Plaintiff was acting under a reasonable, good faith belief that Plaintiff's right to be free from discrimination on the basis of race was violated.

165.     Plaintiff was subjected to a materially adverse action at the time, or after the protected conduct took place.

166.     There was a causal connection between Defendants' materially adverse actions and Plaintiff's protected activity.

167.     Defendants acted upon a continuing course of conduct.

168.     Plaintiff will rely on a broad array of evidence to demonstrate a causal link between his protected activity and Defendants' actions taken against them, such as the unusually suggestive proximity in time between events, as well as Defendants' antagonism and change in demeanor toward Plaintiff after Defendants became aware of her protected activity.

169.     As a result of Defendants' violations of Section 1981, Plaintiff has suffered damages including but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendants and prays for the following relief: (1) actual damages; (2) compensatory damages in an amount consistent with Section 1981; (3) an award of reasonable attorneys' fees and costs of this action in accordance with Section 1981; (4) an award of pre- and post-judgment interest and court costs as further allowed by law; (5) an adjudication and declaration that the City's conduct as set forth herein is in violation of Section 1981; and (6) punitive damages in accordance with Section 1981; (7) front pay in accordance with Section 1981; (8) all additional general and equitable relief to which Plaintiff is entitled.

## COUNT VII
## DECLARATORY RELIEF ALLEGATIONS

170.    Plaintiff incorporates by reference each and every allegation made in the above paragraphs of this complaint.

171.    A present and actual controversy exists between Plaintiff and Defendants concerning their rights and respective duties.

172.    Plaintiff contends Defendants violated his rights as complained of herein.

173.    Plaintiff is informed and believes that Defendants deny these allegations.

174.    Declaratory relief is therefore necessary and appropriate.

**WHEREFORE,** Plaintiff seeks a judicial declaration of the rights and duties of the respective parties.

## COUNT VIII
## INJUNCTIVE RELIEF ALLEGATIONS

175.    Plaintiff Ricky Savage incorporates by reference each and every allegation made in the above paragraphs of this complaint.

176.    No plain, adequate or complete remedy at law is available to Plaintiff to redress the wrongs addressed herein.

177.    If this Court does not grant the injunctive relief sought, Plaintiff will be irreparably harmed.

**WHEREFORE,** Plaintiff seeks an order enjoining Defendants from engaging in the unlawful acts complained of herein.

### JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues raised by this complaint.

Respectfully submitted,

**DEREK SMITH LAW GROUP, PLLC**

By: _____

SUSAN KEESLER, ESQ.
Attorney ID No. 312977
1835 Market Street, Suite 2950
Philadelphia, PA 19103
(215) 391-4790
susan@dereksmithlaw.com
Attorneys for Plaintiff, Ricky Savage

Dated:  December 15, 2019

28