**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **RICKY SAVAGE**, | **CIVIL ACTION** |
| Plaintiff, | |
| *v.* | **NO. 19-6026-KSM** |
| **TEMPLE UNIVERSITY – OF THE COMMONWEALTH SYSTEM OF HIGHER EDUCATION,** et al., | |
| Defendants. | |

<u>**MEMORANDUM**</u>

**MARSTON, J.**                                                                 **June 25, 2020**

Plaintiff Ricky Savage sues his former employer, Defendant Temple University – of the Commonwealth System of Higher Education and multiple Temple supervisors (collectively, "Temple"), for religious, race, and intersectional discrimination under various Federal and Pennsylvania statutes.  Temple filed a partial motion to dismiss.  For the reasons discussed below, the Court grants the motion in part and denies the motion in part.

### I.    *Factual Background*

Temple University hired Savage as an electrical supervisor on June 4, 2018.  (Doc. No. 18 at ¶ 31.)  Three days into the job, Savage told Defendant Kevin Casey, the Director of Operations, that Savage was Muslim and needed to miss three to four hours every Friday afternoon to attend religious services at his mosque.  (*Id.* at ¶¶ 11, 32, 34.)  Savage also said that he was willing to make up the time that he missed by coming to work early or staying late.  (*Id.* at ¶ 33.)  Casey permitted Savage to attend services on Friday, June 8, 2018, but said that he would need to speak to his supervisor, Defendant Joseph Monahan, about whether Temple would

be able to accommodate the request moving forward.  (*Id.* at ¶¶ 35, 36.)

On June 14, 2018, Casey informed Savage that his request had been denied and that he would not be allowed to leave work early to attend religious services. (*Id.* at ¶ 39.)  During that meeting, Savage gave Casey a letter, in which he again requested that he be allowed to attend services on Fridays.  (*Id.* at ¶ 40.)  He also stated that he was willing to work on Christmas and during recognized holidays for religions other than Islam.  (*Id.*)  Savage then asked Casey if he could attend a religious holiday service for Ramadan at his mosque that Friday, June 15, 2018. (*Id.* at ¶ 42.)  Casey forwarded the letter and Savage's request to Monahan, but both were denied. (*Id.* at ¶¶ 43–44.)

Savage asked Casey if he could instead use a personal day to attend the religious service for Ramadan, and Casey approved the request.  (*Id.* at ¶ 45.)  Savage attended the service, and his personal day was reflected both in his time and in his personnel records.  (*Id.* at ¶ 47.)  The next Tuesday, June 19, 2018, Defendant Brendan Muller, the Assistant Director of Operations and Maintenance, called Savage to his office. (*Id.* at ¶¶ 14, 49.)  Muller told Savage that he was being terminated because he had taken the previous Friday off "without permission."  (*Id.* at ¶ 49.)  Savage responded that the missed day was approved by Casey as personal time.  (*Id.* at ¶ 50.)  Muller agreed to pass this information on to Monahan, but when Savage followed up, Muller told him that Monahan had chosen to uphold the termination.  (*Id.* at ¶ 53.)

Savage contacted Defendant Felisha Brown, Temple's Employee Relations Manager, and told her that he felt his termination was the result of unlawful discrimination based on his request for a religious accommodation.  (*Id.* at ¶¶ 17, 57.)  Brown said that she was aware of his request for a religious accommodation but the accommodation had been denied.  (*Id.* at ¶ 59.)  She also said that Savage was terminated for calling out of work the previous Friday.  (*Id.* at ¶ 60.)

2

Savage filed a Charge of Discrimination with the EEOC, which was jointly filed with the Pennsylvania Human Relations Commission and the Philadelphia Commission on Human Relations.  (Doc. No. 19 at p. 15.)  On the charge form, Savage checked the boxes for "Religion", "Retaliation", and "Other" ("wrongful termination") as the bases for his discrimination claim.  (*Id.*)  He did not check the box next to "Race."  (*Id.*)  With the charge form, his attorneys submitted a letter, and in the header, the letter lists the "Nature of Complaint" as "Religious Discrimination, Retaliation, Wrongful Termination."  (*Id.* at p. 16.)  The letter includes a statement of facts with 55 numbered paragraphs that is nearly identical to Savage's statement of facts in the amended complaint.  (*Compare* Doc. No. 19 at pp. 18–24 *with* Doc. No. 18 at ¶¶ 3–20, 31–74.)  In the first paragraph of the statement of facts, Savage states that he is "an individual black male who practices the Muslim religion."  (Doc. No. 19 at p. 18.)

After receiving a right-to-sue letter from the EEOC, Savage filed this action.  (Doc. No. 18 at ¶ 26.)  In his amended complaint he raises 14 counts for unlawful religious, race, and intersectional discrimination under Title VII, 42 U.S.C. § 2000e-2; 42 U.S.C. § 1981; the Pennsylvania Human Relations Act (PHRA), 43 Pa. Stat. & Con. Stat. § 951; and the Philadelphia Fair Practices Ordinance (PFPO), § 9-1103(1).  (Doc. No. 18.)  He seeks damages, declaratory relief, and injunctive relief.  (*Id.* at ¶ 2.)  Temple filed a motion for partial dismissal, contending that Savage has not (1) exhausted administrative remedies on his race discrimination claims under Title VII, the PHRA, and the PFPO; (2) stated a claim for race discrimination under § 1981; or (3) pled a claim for injunctive relief.  (Doc. No. 19.)  In support of its motion, Temple relies on Savage's EEOC charge form.

## II.    *Standard of Review*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When reviewing a motion to dismiss, courts "must accept the allegations in the complaint as true, but are not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (quotation marks omitted). "As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Securities Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). "However an exception to the general rule is that a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *Id.* (quotation marks omitted and alterations accepted). The court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Keystone Redevelopment Partners, LLC v. Decker*, 631 F.3d 89, 95 (3d Cir. 2011) (quotation marks omitted).

Because Savage's EEOC charge is a matter of public record and integral to his discrimination claims, we consider it in deciding this motion to dismiss. *See Ruddy v. U.S. Postal Serv.*, 455 F. App'x 279, 283 (3d Cir.2011) ("The Magistrate Judge and District Court properly relied on Ruddy's EEOC file, which Ruddy referenced in his complaint and which is

4

integral to his claim . . . ."); *Braddock v. SEPTA*, No. 13-6171, 2014 WL 6698306, at *7 (E.D. Pa. Nov. 25, 2014) ("I may properly consider EEOC filings in the context of a motion to dismiss for failure to exhaust administrative remedies without converting the motion into one for summary judgment.").

## III.   Discussion

Temple argues that Savage has not exhausted administrative remedies for his race discrimination claims under Title VII, the PHRA, and the PFPO, that he has not stated a claim for race discrimination under § 1981, and that he has not stated a claim for injunctive relief.  We address each argument in turn.

### A.   Claims for Race Discrimination Under Title VII, the PHRA, and the PFPO

Savage brings claims for disparate treatment, hostile work environment, and retaliation under Title VII (Counts I, II, and III) and claims for discrimination, retaliation, and aiding and abetting under the PHRA (Counts VII, VIII, and IX) and the PFPO (Counts X, XI, and XII). Temple argues that those claims should be dismissed to the extent that they are based on allegations of race discrimination because Savage has not exhausted administrative remedies.

Before bringing a claim for employment discrimination under Title VII, a plaintiff must file a timely charge of discrimination with the EEOC.[1]  *Fort Bend County v. Davis*, 139 S. Ct. 1843, 1851 (2019) ("Title VII's charge-filing requirement is a procedural rule, albeit a

---

[1] Similarly, a plaintiff bringing a claim for discrimination under the PHRA or PFPO must file a charge of discrimination with the Pennsylvania Human Relations Commission or Philadelphia Commission on Human Relations respectively.  *Mandel v. M&Q Packaging, Corp.*, 706 F.3d 157, 163 (3d Cir. 2013) ("To bring a claim under Title VII, a plaintiff must file a charge of discrimination with the EEOC and procure a notice of the right to sue.  The same is required to bring a claim under the PHRA." (citations omitted)); *see also Richards v. Foulke Assocs., Inc.*, 151 F. Supp. 2d 610, 614 (E.D. Pa. 2001) (finding that the plaintiff was "required to exhaust her administrative remedies before pursuing her PFPO claims in court").  PHRA and PFPO claims are interpreted coextensively with a plaintiff's Title VII claim.  *Ahern v. Eresearch Tech., Inc.*, 183 F. Supp. 3d 663, 668 (E.D. Pa. 2016) ("For purposes of assessing claims such as the ones presented herein, Title VII, the PHRA, and the PFPO have been interpreted in a similar fashion.").

mandatory one . . . .); *see also Phillips v. Sheraton Society Hill*, 163 F. App'x 93, 94 (3d Cir. 2005) ("Nonexhaustion constitutes a possible ground for dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).").  Only after the EEOC investigates the charge and issues a right-to-sue letter may the plaintiff file a private action in federal court.  *Barzanty*, 361 F. App'x 411, 414 (3d Cir. 2010) (explaining that this process gives the "EEOC the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court" (quotation marks omitted)).  Because exhaustion is a prerequisite to filing suit, the Third Circuit has held that a federal action is limited to "claims that are within the scope of the initial administrative charge" and the "EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."  *Id.* at 413–14 (quotation marks omitted).

There are two areas on an EEOC charge form where the claimant discusses the bases for his or her discrimination claim — first, in the area titled "bases for discrimination," the claimant checks the box next to the relevant categories of discrimination (e.g., race, sex, religion), and second, in the area titled "the particulars are," the claimant describes the events giving rise to his or her claim of discrimination.  *See Hicks v. ABT Assocs., Inc.*, 572 F.2d 960, 962 (3d Cir. 1978).  A plaintiff's discrimination claim will not be dismissed merely because he or she failed to check the appropriate box on the charge form.  The court does not "take a hyper-technical view" of the charge, but instead, considers all "claims explicitly referenced" in the charge along with any "acts encompassed within the charge's broad terms or those fairly read as interchangeable with the described discrimination, as well as any claims that are closely related to those included in the administrative complaint."  *Thomas v. St. Mary Med. Ctr.*, 22 F. Supp. 3d 459, 468 (E.D. Pa. 2014).  That said, when the employee "does not offer facts or check the box on the opening form" for a specific type of discrimination, we must dismiss the claim "with prejudice for failure

6

to exhaust her administrative remedies." *Titus-Williams v. Schirg*, No. 19-4743, 2020 WL 424950, at *1 (E.D. Pa. Jan. 24, 2020).

We agree with Temple that Savage has not exhausted administrative remedies as to his claims for race discrimination.  On his EEOC charge form, Savage checked the boxes for "Religion," "Retaliation," and "Other," and under "Other," he wrote, "wrongful termination." (Doc. 19 at p. 15.)  He left blank the box next to "Race."  (*Id.*)  With this form, Savage's attorney submitted a letter, in which he again identifies the "Nature of the Complaint" as "Religious Discrimination, Retaliation, Wrongful Termination."  (*Id.* at p. 16.)  The letter then spends six pages and 55 numbered paragraphs explaining that Savage asked Temple if he could leave work early on Fridays to attend religious services, that Temple denied the request, and that the University fired Savage when he used personal time to attend the service.  (Doc. No. 19 at pp. 18–24.) At the end of the narrative, Savage alleges that his "termination based on missing work was pretext for *religious discrimination* and Respondents not wanting to accommodate [his] requests."  (Doc. No. 20-1 at ¶ 41; *see also id.* at ¶ 43 (stating that he told Brown that "he felt the termination was an unlawful discrimination for his requesting a *religious accommodation*" (emphasis added)); *id.* at p. 11 (submitting the EEOC charge via email and listing the subject matter as "Charge of Religious Discrimination filed on behalf of Ricky Savage").).

Savage argues that his charge raises a claim for race discrimination because in the first paragraph of his statement of facts, he states that he is a "black male."  (Doc. No. 20 at p. 4.)  But it is not clear from the record that this statement, standing alone, put the EEOC on notice that he was alleging race discrimination.  *See Antol v. Perry*, 82 F.3d 1291, 1296 (3d Cir. 1996) (concluding that the "gravamen" of the plaintiff's EEOC charge was for "disability discrimination" and therefore, "[n]either the EEOC nor the agency were put on notice of a

7

gender discrimination claim"); *see also Titus-Williams*, 2020 WL 424950, at *1 ("The administrative agency cannot guess at a claim simply because of the employee's gender, age, race, or disability.  The employee must identify the type(s) of claim she wishes to pursue.").

Other than saying that he is a "black male," Savage did not mention race or race discrimination anywhere in the charge or the accompanying letter, nor did he allege any facts which tend to show race discrimination.  When coupled with his admitted failure to check the box next to "Race," we cannot find that the charge put the agency on notice of Savage's race discrimination claim, particularly not when his charge was submitted by an experienced attorney, and the accompanying letter spends six pages alleging what Savage himself describes as "unlawful discrimination for his requesting a *religious accommodation*."[2]  (Doc. No. 20-1 at ¶ 43 (emphasis added).)  *See Mandel*, 706 F.3d at 164 (holding that the plaintiff failed to exhaust administrative remedies for her retaliation claim where she failed to check the box for retaliation on the charge or allege any retaliatory conduct in the charge); *Barzanty*, 361 F. App'x at 414 (holding that the plaintiff's EEOC charge did not "give rise to a hostile work environment claim" because she did not provide any "facts that suggest a hostile work environment, and she did not

---

[2] One court in this district has found that although the plaintiff failed to check the gender discrimination box, the plaintiff exhausted administrative remedies as to her gender discrimination claim when she stated in the charge that she was a "White female" because there was evidence that the agency interpreted the charge as including a claim for gender discrimination.  *See Hemphill v. Phila. Housing Auth.*, Civil Action No. 16-4551, 2016 WL 6995021 (E.D. Pa. Nov. 30, 2016).  The charge form in *Hemphill* was completed and submitted by the claimant, not an attorney, and the narrative account included on that form was only two paragraphs long, significantly less than the multi-page statement of facts submitted by Savage's attorney.  *Id.*; *see Johnson v. Chase Home Fin.*, 309 F. Supp. 2d 667, 672 (E.D. Pa. 2004) (finding that although the plaintiff checked the box next to "retaliation" on the EEOC intake questionnaire, he did not include a claim for retaliation on the EEOC charge, a failure which was "particularly unjustified given that plaintiff was represented by counsel experienced in EEOC matters throughout the administrative proceedings").  Here, Savage has not provided a copy of his right-to-sue letter or alleged that the agency in fact investigated whether he was discriminated against because of his race.  *Compare Hemphill*, 2016 WL 6995021, *with Fucci v. Grad. Hosp.*, 969 F. Supp. 310, 315 (E.D. Pa. 1997) (finding that although the plaintiff's EEOC charge discussed his gender, the plaintiff failed to exhaust administrative remedies on his gender discrimination claim because he checked the boxes next to "national origin" and "other," but not "sex," on the charge form, and EEOC documents showed that the agency "did not perceive plaintiff's claim to include gender discrimination").  Savage will be given an opportunity to amend his complaint to show, if he can, that the EEOC interpreted his charge as including a claim for race discrimination.

check the box indicating her charge was a continuing action").

In addition to his purely race discrimination claims, Savage argues that he has stated claims for intersectional discrimination under Title VII, the PHRA, and the PFPO.  He asserts that "Defendants discriminated against Plaintiff based on his belief in a religion that is perceived and believed to be tied to a particular race."  (Doc. No. 20 at p. 6.)  A claim for intersectional discrimination is distinct from a claim for discrimination based on a single protected characteristic.  *See Jefferies v. Harris Cty. Cmty Action Ass'n*, 615 F.2d 1025, 1032 (5th Cir. 1980) (holding that the district court erred when it "separately addressed [her] claims of race discrimination and sex discrimination," instead of analyzing her claim as one "based on a combination of race and sex"); *see also Fucci*, 969 F. Supp. at 316 (finding that the plaintiff exhausted administrative remedies for his national-origin-plus-gender discrimination claim but not for his purely gender discrimination claim).  Because Temple does not address Savage's claims for intersectional discrimination in its motion to dismiss or reply brief, those claims survive the motion, and we do not address them in this opinion.

To the extent that Counts I–III and VII–XII are based solely on allegations of race discrimination, those claims are dismissed without prejudice.

### B.  The Race Discrimination Claims Under § 1981

Savage also brings claims for disparate treatment, hostile work environment, and retaliation under § 1981 (Counts IV, V, and VI).  Administrative exhaustion is not a prerequisite to a § 1981 claim.  *Cheyney State Coll. Faculty v. Hufstedler*, 703 F.2d 732, 737 (3d Cir. 1983). However, Temple argues that Savage's claim for race discrimination under § 1981 must be dismissed because Savage has not alleged any facts which support an inference that his race was a determining factor in the decision to terminate his employment.  (Doc. No. 19 at p. 10.)

9

"[T]he substantive elements of a claim under section 1981 are generally identical to the elements of an employment discrimination claim under Title VII." *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 181–82 (3d Cir. 2009). "Accordingly, a court reviews them under the burden-shifting framework outlined in *McDonnel Douglas Corp. v. Green*, 411 U.S. 792 [ ] (1973)." *Castleberry*, 863 F.3d at 263. Under that framework, the plaintiff must establish the elements of his claim; if he does, the burden shifts to the employer to articulate a "legitimate, nondiscriminatory reason for the adverse employment action"; after which, the "plaintiff bears the burden of establishing that the employer's stated reason for the adverse action was an excuse, or pretext, for why the action was actually taken." *Id.* (quotation marks omitted). "Under the *McDonnell-Douglas* framework, a claim of employment discrimination necessarily survives a motion to dismiss so long as the requisite *prima facie* elements have been established." *Id.* at 266. Using this approach, we address each count in turn.

### 1. Disparate Treatment

To establish a claim for disparate treatment discrimination under § 1981, "a plaintiff must show: (1) that he belongs to a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in § 1981." *Id.* Temple argues that Savage has not satisfied the second element because he has not alleged any facts which tend to show that Temple intentionally discriminated against him on the basis of race. *See Hood v. N.J. Dep't of Civil Serv.*, 680 F.2d 955, 959 (3d Cir. 1982) (explaining that "intentional discrimination is a required element of a § 1981 claim").

Savage argues that we can:

> draw the reasonable inference that his race (Black) was a determinative or motivating factor in Defendants' decision to terminate him where he averred he is a Black male Muslim who practices the Islam religion, that he requested a reasonable religious accommodation to attend religious services, that Defendants

denied him that request, that he complained about this denial, and Defendants then retaliated against him for participating in protected activity by complaining.

(Doc. No. 20 at p. 6.)  But taking those allegations as true, Savage has pled a claim for *religious* discrimination, not disparate treatment race discrimination.  Savage's only allegation related to race is that he is a "Black male Muslim."  That allegation satisfies the first prong of the disparate treatment test by showing that he "belongs to a racial minority," but on its own, it does not show that Temple intended to discriminate against him because of his race.  *Cf. Castleberry*, 863 F.3d at 266 (finding that the plaintiffs alleged facts tending to show an intent to discriminate on the basis of race where they alleged that "they were the only black males assigned to their specific site, they were assigned undesirable duties, they were the targets of racial epithets, and they were fired twice due to their race"); *see also Dingus v. Tenn. Dep't of Safety*, Nos. 3:07-cv-452, 3:10-cv-435, 2014 WL 4658943, *1 n.1 (E.D. Tenn. Sept. 17, 2014) (The plaintiff's "claims of racial discrimination arise only in the context of his claims for religious discrimination.  In other words, he is referred to as a 'black Muslim.'  But this alone is not enough for a claim of racial discrimination.").

Savage notes that he "pled that he was 'terminated because of his race, religion and participation in a protected activity,'" and that "Defendants discriminated against him on the basis of his religion (Islam) and race (Black)."  (Doc. No. 20 at p. 6.)  But those are legal conclusions, not factual allegations, and we do not consider them in deciding a motion to dismiss.  *See Castleberry*, 863 F.3d at 263 (explaining that on a motion to dismiss, the court does not "accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation").  Because Savage has alleged no facts that give rise to the inference that Temple discriminated against him on the basis of race, he has not stated a claim for disparate treatment race discrimination under § 1981.

### 2.   *Hostile Work Environment*

To establish a claim for hostile work environment on the basis of race, a plaintiff must show that "[1] the employee suffered intentional discrimination because of his/her race, [2] the discrimination was severe or pervasive, [3] the discrimination detrimentally affected the plaintiff, [4] the discrimination would detrimentally affect a reasonable person in like circumstances, and [5] the existence of *respondeat superior* liability (meaning the employer is responsible)." *Id.* (alterations adopted).  As discussed above, Savage has not alleged any facts which tend to show that he was intentionally discriminated against because of his race.  Therefore, his hostile work environment race discrimination claim also fails.

### 3.   *Retaliation*

Last, to plead a claim for retaliation under § 1981, a plaintiff must show that "(1) he engaged in protected activity; (2) the employer took an adverse employment action against him; and (3) there was a causal connection between his participation in the protected activity and the adverse employment action." *Id.* at 267 (alterations adopted).   In the amended complaint, Savage alleges that "Defendants discriminated against him because of his protected activity." (Doc. No. 18 at ¶ 159.)   But he never explains what the "protected activity" is or how it relates to his race. *Cf. Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) (explaining that "[f]or purposes of the first prong of a prima facie case of retaliation" the plaintiff's "complaint must allege" that he engaged in "protected 'opposition' activity" and that the "opposition was to discrimination based on a protected category, such as age or race").  Savage notes that the "most common activities protected from retaliation under Section 1981 and Title VII are: (1) opposing unlawful discrimination; (2) making a charge of employment discrimination; (3) testifying, assisting or participating in any manner in an investigation, proceeding or hearing under Section

1981." (Doc. No. 18 at ¶ 158.) But nowhere does he allege that he opposed unlawful discrimination on the basis of race, that he filed a charge of race discrimination, or that he testified, assisted, or otherwise participated in an investigation, proceeding or hearing related to race discrimination under § 1981.

To the extent that Counts IV, V, and VI are based solely on race discrimination, those claims are dismissed without prejudice. As with his claims under Title VII, the PHRA, and the PFPO, Savage argues that his § 1981 counts include claims for "*intersectional discrimination* where Defendants discriminated against Plaintiff based on his belief in a religion that is perceived and believed to be tied to a particular race." (Doc. No. 20 at p. 6.) Again, because Temple does not discuss Savage's claim for intersectional discrimination under § 1981 in its motion to dismiss or reply brief, that claim survives the motion, and we do not address it further in this opinion.

### C. The Request for Injunctive Relief

Last, Temple argues that Savage's request for injunctive relief should be dismissed because he has not alleged any facts which tend to show that he will suffer future harm. This argument targets Savage's standing to seek injunctive relief.[3] *See McNair v. Synapse Grp., Inc.*, 672 F.3d 213, 225–26 (3d Cir. 2012).

"It goes without saying that those who seek to invoke the jurisdiction of the federal courts

---

[3] "A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1)," not Rule 12(b)(6) "because standing is a jurisdictional matter." *Ballentine v. United States*, 468 F.3d 806, 810 (3d Cir. 2007). Under this standard, we must first determine whether the motion presents a facial attack or a factual attack. *The Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014). A facial attack is "an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court." *Id.* at 358. By contrast, a factual attack "is an argument that there is no subject matter jurisdiction because the facts of the case . . . do not support the asserted jurisdiction." *Id.* Because Temple argues that the amended complaint fails to plead facts which show that Savage will suffer future harm, it brings a facial attack, and we "apply the same standard of review [we] would use in considering a motion to dismiss under Rule 12(b)(6), *i.e.*, construing the alleged facts in favor of the nonmoving party." *Id.*

must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). In satisfying this requirement, the plaintiff "bears the burden of showing that he has standing for each type of relief sought." *Summers v. Earth Island Institute*, 129 S. Ct. 1142, 1149 (2009). "When, as in this case, prospective relief is sought, the plaintiff must show that he is likely to suffer future injury from the defendant's conduct." *McNair*, 672 F.3d at 223 (quotation marks omitted); *see also Summers*, 129 S. Ct. at 1149 (stating that a plaintiff seeking injunctive relief must show that he is "under threat of suffering 'injury in fact' that is concrete and particularized" and "actual and imminent, not conjectural or hypothetical"). "The threat of injury must be sufficiently real and immediate, and, as a result of the immediacy requirement, past exposure to illegal conduct does not itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects." *McNair*, 672 F.3d at 223 (quotation marks, citations, and alterations omitted); *see also O'Shea v. Littleton*, 414 U.S. 488, 495 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.").

Generally a former employee does not have standing to seek injunctive relief against his former employer because "there is no immediate threat that they will be wronged again." *Gutierrez v. Johnson & Johnson*, 467 F. Supp. 2d 403, 413 (D.N.J. 2006); *see also Robinson v. Blank*, No. 11 Civ. 2480(PAC)(DF), 2013 WL 2156040, at *12 (S.D.N.Y. May 20, 2013) ("*Lyons* has been held to apply in the employment context, such that a plaintiff who is no longer employed by the defendant, and thus is not likely to face future injury by that defendant, will generally be unable to establish standing to enjoin the defendant from maintaining allegedly unlawful policies." (adopting Report and Recommendation)). However, district courts in other

circuits have recognized a limited exception to this rule where the former employee seeks reinstatement. *See, e.g.*, *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 468 (S.D. N.Y. 2013) ("Accordingly, the Court follows those courts that have held that a plaintiff seeking reinstatement has standing to pursue injunctive or declaratory relief."); *Tolton v. Day*, No. 19-945, 2020 WL 2542129, at \*37 (D.D.C. May 19, 2020) ("Nothing in *Dukes* or any other binding authority precludes a plaintiff asserting an employment discrimination claim from seeking reinstatement as a remedy, and reinstatement is an injunctive remedy."); *cf. Wood v. Dixon*, Civil Action No. 13-0278-KD-N, 2013 WL 6183143, at \*3 n.8 (S.D. Ala. Nov. 26, 2013) (finding that the former employee lacked standing to seek injunctive relief when he was "no longer employed by the Baldwin County District Attorney" and was "not seeking reinstatement"). We are persuaded by the reasoning of *Kassman* and similar cases, and agree that a former employee seeking reinstatement has standing to seek injunctive relief.

Like in *Kassman* and *Tolton*, Savage's request for reinstatement is clear on the face of the amended complaint. (Doc. No. 18 at ¶ 2 ("Plaintiff Ricky Savage seeks declaratory and injunctive relief . . . reinstatement . . . to redress the injuries he has suffered as a result of being discriminated and retaliated against by Defendants on the basis of his race, religion and participation in protected activity."); *see also* Doc. No. 20 at pp. 6–7 (asserting that he continues to suffer harm because Temple has "continued to uphold their termination of Plaintiff, thereby denying him continued employment"). His claim for injunctive relief therefore survives Temple's motion to dismiss. *See, e.g.*, *Tolton*, 2020 WL 2542129, at \*39 ("Here, Plaintiff seek[s] reinstatement . . . and that request for relief is both legally cognizable and sufficient to reject [the defendant's] motion for judgment on the pleadings on their injunctive claims.").

*IV.*     *Conclusion.*

Temple's motion to dismiss is granted in part and denied in part.  To the extent that the amended complaint brings purely race discrimination claims under Title VII, the PHRA, and the PFPO, those claims are dismissed for failure to exhaust administrative remedies.  Savage will be given an opportunity to amend his complaint to allege, if he can, that the EEOC interpreted his charge as including a claim for race discrimination.  To the extent that the amended complaint brings race discrimination claims under § 1981, those claims are also dismissed, and Savage will be given an opportunity to amend his complaint to allege facts which show that Temple intentionally discriminated against him on the basis of race and/or that he engaged in a protected activity related to race discrimination.  Temple's motion to dismiss Savage's claim for injunctive relief is denied.

An appropriate order follows.