**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RICKY SAVAGE, | : | |
| | : | |
| Plaintiff, | : | Civil Action |
| | : | |
| v. | : | No. 2:19-CV-06026-KSM |
| | : | |
| TEMPLE UNIVERSITY – OF THE | : | |
| COMMONWEALTH SYSTEM OF HIGHER | : | |
| EDUCATION, et al., | : | |
| | : | |
| Defendants. | | |

## ORDER

**AND NOW**, this _____ day of _____, 2020, upon consideration of

Plaintiff's Motion to Strike pursuant to Fed. R. Civ. P. 12(f), and Defendants' Response

in Opposition thereto, it hereby **ORDERED** that Plaintiff's Motion is **DENIED**.


BY THE COURT:


_____

KAREN S. MARSTON, J.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RICKY SAVAGE, | : | |
| | : | |
| Plaintiff, | : | Civil Action |
| | : | |
| v. | : | No. 2:19-CV-06026-KSM |
| | : | |
| TEMPLE UNIVERSITY – OF THE COMMONWEALTH SYSTEM OF HIGHER EDUCATION, et al., | : | |
| | : | |
| | : | |
| Defendants. | | |

**DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION TO STRIKE PURSUANT TO FED. R. CIV. P. 12(F)**

## I.    INTRODUCTION

On the eve of the close of discovery in this action, Plaintiff brings this instant Motion to Strike Defendants' Answer to Plaintiff's Amended Complaint and Affirmative Defenses (doc. 33) in order to burden and harass Defendants with needless and costly motion practice.  As discussed in detail below, Defendants properly denied conclusions of law asserted in Plaintiff's Amended Complaint.  Defendants further provided factual denials where necessary despite Plaintiff's distortion of the contents of Defendants' responses. Furthermore, Defendants' affirmative defenses should not be stricken because Plaintiff was given fair notice of these defenses, will suffer no prejudice, and at best has raised issues of disputed fact negating the grant of a motion to strike.

For the following reasons, Plaintiff's Motion to Strike should be denied.

## II.    ARGUMENT

### A.  Legal Standard

Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous

matter." Fed. R. Civ. P. 12(f).   "[S]triking a pleading is a 'drastic remedy' to be used sparingly because of the difficulty of deciding a case without a factual record." BJ Energy, LLC v. PJM Interconnection, LLC, Nos. 08-3649, 09-2864, 2010 U.S. Dist. LEXIS 36969, 2010 WL 1491900, at *1 (E.D. Pa. Apr. 13, 2010) (quoting N. Penn. Transfer, Inc. v. Victaulic Co. of Am., 859 F. Supp. 154, 158-59 (E.D. Pa. 1994)). Thus, although Rule 12(f) grants the court the power to grant a motion to strike, such motions "are not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues." Wilson v. King, No. 06-2608, 2010 U.S. Dist. LEXIS 16184, 2010 WL 678102, at *2 (E.D. Pa. Feb. 24, 2010) (quoting N. Penn. Transfer, 859 F. Supp. at 158 (internal quotations omitted)).

When a party moves to strike a defense on insufficiency grounds, the motion should not be granted "'unless the insufficiency of the defense is clearly apparent.'" Nupro Indus. Corp. v. Lexington Ins. Co., No. 08-4809, 2010 U.S. Dist. LEXIS 61657 (E.D. Pa. June 21, 2010) (quoting Synthes v. Globus Med., Inc., No. 04-1235, 2007 U.S. Dist. LEXIS 23355, 2007 WL 1001587, at *1 (E.D. Pa. Mar. 29, 2007)).   Moreover, an affirmative defense need not be plausible to survive; it must merely provide fair notice of the issue involved. Tyco Fire Prods. LP v. Victaulic Co., 777 F. Supp. 2d 893, 900 (E.D. Pa. April 12, 2011).

Further, a "'motion to strike will not be granted where the sufficiency of a defense depends on disputed issues of fact.  Even when the facts are not in dispute, Rule 12(f) is not meant to afford an opportunity to determine disputed and substantial questions of law.'" Nupro Indus. Corp., at *2 (quoting N. Penn. Transfer, 859 F. Supp. at 159).

### B. Plaintiff Was Provided Fair Notice of Defendants' Affirmative Defenses and Will Suffer No Prejudice If These Affirmative Defenses Remain.[1]

In order to succeed on his motion to strike, Plaintiff must show that he would suffer prejudice if Defendants' affirmative defenses are not stricken. Great West Life Assur. Co. v. Levithan, 834 F. Supp. 858 (E.D. Pa. 1993).  The crux of Plaintiff's claim of prejudice is that he would have to "engage in continued and burdensome discovery to discern how [Defendants' affirmative defenses] relate to Plaintiff's claims, necessitating further depositions and discovery requests." (Pltfs Motion to Strike, at p. 10.)  Yet despite this alleged prejudice, Plaintiff inexplicably brings this instant motion to strike just two days before the close of discovery even though he was provided fair notice of these defenses, all of which are consistent with an employment discrimination action. Contrary to Plaintiff's assertions, he was given ample opportunity to explore key factual issues relevant to the claims and defenses during more than four (4) months of discovery that included document discovery, interrogatories, and approximately 40 hours of deposition time covering material events that occurred over a two-week span.

In reality, Plaintiff here does not bring a motion to strike, but rather a motion for summary judgment masquerading as a motion to strike supported by Plaintiff's skewed recitation of the record.  Plaintiff entirely misses the mark.  Federal Rule of Civil Procedure 8(c) provides that a party must merely state an affirmative defense. Tyco Fire Prods. LP v. Victaulic Co., 777 F. Supp. 2d at 901 ("applying the concept of notice to require more than awareness of the issue's existence imposes an unreasonable burden on defendants who risk the prospect of waiving a defense at trial by failing to plead it").  Because Plaintiff

---

[1] Defendants agree to withdraw their Ninth Affirmative Defense only.

had an opportunity to conduct discovery in all of the matters plead, he will suffer no prejudice from having to respond to these defenses at trial.

Even if this Court deems it necessary to examine the allegations and facts adduced in discovery, the record does not support Plaintiff's demand that certain affirmative defenses be stricken.   For example, Defendants have properly pled, and adduced evidence, to support the defense that Plaintiff failed to state a claim for intersectional (religion and race) discrimination.   It is undisputed that Plaintiff raised no intersectional discrimination claims in his Charge of Discrimination dual-filed with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC"). (See Plaintiff's Administrative Charge, attached hereto as Exhibit 1.)   As a result, Plaintiff has not properly stated and has waived his intersectional race claim. Yet, Plaintiff still improperly includes intersectional discrimination claims as part of the causes of action alleged for violations under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Pennsylvania Human Relations Act, 43 P.S. §951, et seq. ("PHRA"), and the Philadelphia Fair Practices Ordinance § 9-1100, et seq. ("PFPO").   For this reason alone, the following affirmative defenses should not be stricken:

a) First Affirmative Defense (Plaintiff's claims are barred, in whole or in part, because Plaintiff has failed to state a cause of action upon which relief may be granted.)

b) Second Affirmative Defense (Plaintiff's claims, as set forth and pleaded in the Amended Complaint, are barred, in whole or in part, by the applicable statute of limitations.)

c) <u>Fifth Affirmative Defense</u> (Plaintiff has failed to exhaust the requisite administrative remedies.)

d) <u>Eighth Affirmative Defense</u> (This Court lacks jurisdiction over all claims not included in Plaintiff's Charge of Discrimination dual filed with the Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission.)

e) <u>Seventeenth Affirmative Defense</u> (Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver.)

f) <u>Twenty-Sixth Affirmative Defense</u> (Plaintiff has failed to state a cause of action pursuant to PHRA § 955 et seq. upon which relief may be granted.)

g) <u>Twenty-Seventh Affirmative Defense</u> (Plaintiff has failed to state a cause of action pursuant to the Philadelphia Fair Practices Ordinance § 9-1103(1) upon which relief may be granted.)

h) <u>Twenty-Eighth Affirmative Defense</u> (Plaintiff has failed to state a claim for Declaratory relief upon which relief may be granted.)

In other circumstances, Plaintiff seeks to improperly strike certain affirmative defenses where Plaintiff at best presents disputed issues fact that would necessitate the denial of a motion to strike. <u>Nupro Indus. Corp. v. Lexington Ins. Co.</u>, at *2.  These affirmative defenses and the reasons why they should not be stricken are as follows:

a) <u>Thirteenth Affirmative Defense</u> (Plaintiff's claim for religious discrimination and retaliation fails because Plaintiff rejected Defendants proposed reasonable accommodation that would not impose an undue hardship on Defendants.); and

<u>Fourteenth Affirmative Defense</u> (Plaintiff's claim for religious discrimination and retaliation fails because he failed to engage in the interactive process.)

    i.  Defendants pled that Plaintiff stated that he *had* to attend his religious services in Wilmington, Delaware in response to Kevin Casey's query of whether there was some other alternative that would allow Plaintiff to attend services closer to Temple University's campus. (Answer to Amended Complaint at ¶ 39.)  Kevin Casey supported this same allegation in his deposition testimony. (Casey Dep. at 72:1-11, attached hereto as Exhibit 2.)  Plaintiff only points to the letter he submitted that articulated his accommodation request as being sufficient to support his claim that he sufficiently engaged in the interactive process. Plaintiff's rejection of Kevin Casey's suggestion for an accommodation closer to Temple indicates that Plaintiff had no intention of meeting Temple half-way and engaging in genuine discussion regarding reasonable accommodations.

b)  <u>Twenty-Ninth Affirmative Defense</u> (Plaintiff has failed to state a claim for Injunctive relief upon which relief may be granted.)

    i.  This Court held that Plaintiff's injunctive relief claim survived Defendants motion to dismiss for failure to state a claim because Plaintiff has standing to bring an injunctive relief claim if he seeks reinstatement with Temple.  While Plaintiff pled that he seeks reinstatement, he had no intention of contacting anyone at Temple or returning to Temple because he believed he would have returned

to a hostile environment and for fear of further retaliation. (Plaintiff's Dep. at 252:22-253:9, attached hereto as Exhibit 3.)  It is undisputed that Plaintiff has no intention of once again becoming a Temple employee and thus Defendants' affirmative defense addressing Plaintiff's injunctive relief claim is proper and should not be stricken.

### C. Plaintiff Frivolously Requests that Certain Responses to Paragraphs in Plaintiff's Amended Complaint Be Stricken.

Plaintiff's grounds for striking Defendants' responses to a select number of allegations in Plaintiff's Amended Complaint is that Defendants solely stated that those averments were denied as legal conclusions when in fact the averments contained statements of fact.  Plaintiff improperly seeks to strike these enumerated paragraphs for two reasons: 1) many of the paragraphs identified do indeed solely aver conclusions of law, and 2) Defendants provided factual responses to the paragraphs that contained assertions of fact.

Defendants properly denied as legal conclusions Plaintiff's averments that he complied with all administrative prerequisites and legal basis for this Court's jurisdiction over this matter.  The question of whether Plaintiff fulfilled administrative perquisites prior to filing this action is undoubtedly a question of law that a court will consider based on the evidence presented.  Indeed, it is the contents of Plaintiff's Charge of Discrimination, and the administrative agencies' interpretation of that document, that will determine the basis for whether Plaintiff exhausted his administrative remedies – not Plaintiff's conclusory averment that he has met the legal standard.  Moreover, Plaintiff's averments regarding jurisdiction and venue are clear conclusions of law as they state the statutory basis for

this action.  These averments do not speak to any of the factual determinations that will be made in this action.

Plaintiff also points to several of Defendants' responses as deficient for failure to provide anything more than a denial for stating a legal conclusion.  An examination of Defendants responses indicates the gross level of frivolity with which Plaintiff brings this instant motion:

a) Paragraph 36 – Plaintiff averred that "Defendant CASEY permitted Plaintiff to attend the services on Friday, June 8, 2018."  Defendants responded "Denied. Plaintiff did not receive approval from Casey to be absent from work on Friday, June 8, 2018."

b) Paragraph 40 – Plaintiff averred that he presented a six-page letter discussing his accommodation request, which also cited several statutes outlining legal requirements.  Defendants properly denied Plaintiff's averments because Plaintiff attempted to characterize the contents of his letter, the contents of which speak for themselves. Defendants further denied as legal conclusions Plaintiff's discussion of federal and state employment law.

c) Paragraph 62 – Plaintiff averred that Defendants unlawfully upheld the unlawful termination of Plaintiff.  This averment plainly states the legal conclusion that Plaintiff's termination was unlawful, and Defendants properly denied this allegation as a legal conclusion.

d) Paragraph 63 – Plaintiff averred that he contacted Temple's Equal Employment Opportunity ("EEO") office to report his complaint.  Defendants provided a factual denial to this allegation by stating that Plaintiff contacted Temple's EEO

after Defendant Brown had already referred Plaintiff to that same office. Plaintiff's claim that Defendants denied the averments in this paragraph as a conclusion of law is plainly untrue.

Plaintiff's attempt to strike Defendants' responses to his Amended Complaint is tantamount to harassment and a naked attempt to drive up litigation costs with needless motion practice.  Defendants have given sufficient answers to Plaintiff's allegations, and have further met the notice pleading standard required in this jurisdiction.  As a result, Plaintiff's request to strike Defendants' Answer to Plaintiff's Amended Complaint should be denied.

## III.    <u>CONCLUSION</u>

In light of all of the foregoing, Defendants respectfully request that the Court deny the Plaintiffs' Motion to Strike.


Respectfully submitted,


**TUCKER LAW GROUP, LLC**

Date: <u>August 19, 2020</u>          /s/ Dimitrios Mavroudis
                                    Joe H. Tucker, Jr., Esquire
                                    Leslie M. Greenspan, Esquire
                                    Dimitrios Mavroudis, Esquire
                                    Ten Penn Center
                                    1801 Market Street, Suite 2500
                                    Philadelphia, PA 19103
                                    (215) 875-0609

                                    *Attorneys for Defendants, Temple University –*
                                    *Of The Commonwealth System of Higher*
                                    *Education, Joseph Monahan, Kevin Casey,*
                                    *Brendan Muller, and Felisha Brown*

9

## **CERTIFICATE OF SERVICE**

I, Dimitrios Mavroudis certify that a copy of the foregoing document was filed

through the Court's ECF system on the date set forth below, and that such filing

generated a notice of filing that constitutes service on all counsel of record, including:

> Susan Keesler, Esquire
> Derek Smith Law Group, PLLC
> 1835 Market Street, Suite 2950
> Philadelphia, PA  19103
>
> *Counsel for Plaintiff*


Date: <u>August 19, 2020</u>                          <u>/s/ Dimitrios Mavroudis          </u>
                                                            Dimitrios Mavroudis, Esquire

EXHIBIT 1



January 15, 2019

**<u>Via Email (*PHILATTY@eeoc.gov*) & First Class Mail</u>**
Equal Employment Opportunity Commission
801 Market Street, Suite 1300
Philadelphia, PA 19107-3127

**<u>CHARGE</u>**

Re:  Our Client:          **Ricky Savage**

(CLAIMANT)

**Nature of Complaint:**          RELIGIOUS DISCRIMINATION,
RETALIATION, WRONGFUL TERMINATION

**-against-**

Temple University-Of the Commonwealth System
of Higher Education; Temple University-Of the
Commonwealth System of Higher Education d/b/a
Temple University; Joseph Monahan, individually;
Kevin Casey, *individually*; Brendan Muller,
*individually*; and, Felisha Brown, *individually*.

(RESPONDENTS)

We hereby request that this Charge be simultaneously filed with the Pennsylvania Human
Relations Commission, the Philadelphia Commission on Human Relations and any other state and
local agency with whom you have a work sharing agreement as Claimant is making a claim under
all applicable rules, regulations, statutes and ordinances that apply to Claimant's facts.

Miami Office: 100 SE 2nd Street, Suite 2000, Miami, FL 33131 | (305) 946-1884
New Jersey Office: 73 Forest Lake Drive, West Milford, NJ 07421 | (973) 388-8625
New York City Office: One Penn Plaza, Suite 4905, New York, NY 10119 | (212) 587-0760
Philadelphia Office: 1835 Market Street, Suite 2950, Philadelphia, PA 19103 | (215) 391-4790
Website: www.discriminationandsexualharassmentlawyers.com

SAVAGE 0143

Dear Sir or Madam:

The following is a charge of discrimination and retaliation that this office is filing on behalf of the charging party against the above Respondents.

Claimant RICKY SAVAGE'S address and telephone number are:



The name and address of the business against whom the charge is made is:

Temple University- Of the Commonwealth System of Higher Education
1801 North Broad Street
Philadelphia, PA 19122
(215) 204-7000

Temple University- Of the Commonwealth System of Higher Education
d/b/a Temple University
1801 North Broad Street
Philadelphia, PA 19122
(215) 204-7000

Joseph Monahan
Via his place of employment
1801 North Broad Street
Philadelphia, PA 19122
(215) 204-7000

Kevin Casey
Via his place of employment
1801 North Broad Street
Philadelphia, PA 19122
(215) 204-7000

Brendan Muller
Via his place of employment
1801 North Broad Street
Philadelphia, PA 19122
(215) 204-7000

SAVAGE 0144

Felisha Brown
Via her place of employment
1801 North Broad Street
Philadelphia, PA 19122
(215) 204-7000

The exact number of employees at the above entity is unknown, but upon information and belief, there are well more than the statutory minimum.

**A Statement of Facts is as follows: Upon information and belief, Complainant alleges as follows:**

1.  Claimant RICKY SAVAGE (hereinafter also referred to as Claimant or "SAVAGE") is an individual black male who practices the Muslim religion.  Claimant is a resident of the city of Philadelphia located within the county of Philadelphia.

2.  Respondent TEMPLE UNIVERSITY-OF THE COMMONWEALTH SYSTEM OF HIGHER EDUCATION is a domestic non-profit corporation duly existing under the laws of the Commonwealth of Pennsylvania.

3.  Respondent TEMPLE UNIVERSITY-OF THE COMMONWEALTH SYSTEM OF HIGHER EDUCATION operates is headquarters at 1801 N. Broad Street, Philadelphia, PA is headquartered at 1801 N. Broad Street, Philadelphia, PA 19122.

4.  Respondent TEMPLE UNIVERSITY-OF THE COMMONWEALTH SYSTEM OF HIGHER EDUCATION d/b/a TEMPLE UNIVERSITY is headquartered at 1801 N. Broad Street, Philadelphia, PA 19122.

5.  Respondent TEMPLE UNIVERSITY-OF THE COMMONWEALTH SYSTEM OF HIGHER EDUCATION and TEMPLE UNIVERSITY-OF THE COMMONWEALTH SYSTEM OF HIGHER EDUCATION d/b/a TEMPLE

3

SAVAGE 0145

UNIVERSITY (hereinafter collectively referred to as Respondents and "TEMPLE") are joint and single employers of Claimant.

6.   At all times material Respondent JOSEPH MONAHAN (hereinafter referred to as Respondent and "MONAHAN") was and is an employee for Respondent TEMPLE.

7.   At all times material Respondent MONAHAN is employed as the Associate Vice President of Facilities Operations and Operations of Respondent TEMPLE.

8.   At all times material Respondent MONAHAN held supervisory authority over Claimant.

9.   At all times material Respondent KEVIN CASEY (hereinafter referred to as Respondent and "CASEY") was and is an employee for Respondent TEMPLE.

10.   At all times material Respondent CASEY is employed as the Director of Operations and Maintenance of Respondent TEMPLE.

11.   At all times material, Respondent CASEY held supervisory authority over Claimant.

12.   At all times material, Respondent BRENDAN MULLER (hereinafter referred to as Respondent and "BRENDAN") was and is an employee of Respondent TEMPLE.

13.   At all times material, Respondent MULLER is employed as the Assistant Director of Operations and Maintenance for Respondent TEMPLE.

14.   At all times material, Respondent BRENDAN held supervisory authority over Claimant.

15.   At all times material, Respondent FELISHA BROWN (hereinafter referred to as Respondent and "BROWN") was and is an employee of Respondent TEMPLE.

16.   At all times material, Respondent BROWN was employed as an employee relations manager for Respondent TEMPLE.

4

SAVAGE 0146

17.    At all times material, Respondent BROWN held supervisory authority over Claimant.

18.    At all times material, Claimant was an employee for Respondent TEMPLE.

## MATERIAL FACTS

19.    On or around June 4, 2018, Claimant was hired as an Electrical Supervisor for Respondent TEMPLE'S Health Sciences division.

20.    On or around June 7, 2018, Claimant spoke to Respondent CASEY.  During that conversation, Claimant informed Respondent CASEY that he was Muslim and that he needed to attend services at his Mosque on Friday, June 8, 2018.

21.    Claimant explained that he was willing to come into work early, stay late, or otherwise make up the time that he missed to attend his religious services.

22.    The religious services on Friday afternoons would take Claimant out of work for approximately three or four hours, including travel time.

23.    Respondent CASEY told Claimant that CASEY needed to check with his supervisor, Respondent MONAHAN to find out if Respondents could accommodate this request.

24.    Respondent CASEY permitted Claimant to attend his services on Friday, June 8, 2018.

25.    On or around the following Monday, Claimant again approached Respondent CASEY to see if his request to attend religious services on Fridays had been approved by his supervisor.

26.    Respondent Casey stated that he had not received a definitive answer as to whether Claimant was going to be accommodated and permitted to leave work to attend his religious services.

5

SAVAGE 0147

27.    On or around June 14, 2018, Respondent Casey called Claimant into his office and explained that Claimant's request had been denied and that he was not permitted to leave work to attend religious services on Fridays as requested.

28.    Claimant stated that he was going to write a formal letter request to attend his services and further stated that he would be willing to work on Christmas and recognized holidays for religions other than Muslim so that his co-workers could have time off to observe their holidays as well.

29.    At or around the same time it was Ramaadan, a Muslim holiday.  There are only two Muslim religious holidays annually that require Claimant to go to the Mosque or miss work, in addition to the Friday services that he requested to attend.

30.    Claimant asked Respondent CASEY if he could use a personal day to attend the services at his Mosque that Friday for the Ramaadan holiday.

31.    Respondent CASEY told Claimant that it would be fine if he attended his Mosque and used the personal time that Claimant had accrued.

32.    Claimant requested personal time, which Respondents docked from his time and was reflected in Claimant's personnel records.

33.    Claimant attended his religious services on or around June 15, 2018.

34.    Claimant returned to work the following Monday, on or around June 18, 2018.  When Claimant returned he was informed that despite writing a six page letter requesting an accommodation to attend his religious services, the request was patently denied.

35.    In addition, Respondent MULLER terminated Claimant because he took Friday, June 15, 2018, off without permission.

6

SAVAGE 0148

36.     Claimant did in fact have permission from Respondent Casey and Claimant expressed that to Respondent MULLER.

37.     Respondent MULLER expressed that he was not aware of the fact that Claimant obtained permission from Respondent CASEY to take personal time to observe the holiday.

38.     Respondent MULLER told Claimant that he would call Respondent MONAHAN to inform MONOHAN that Claimant had permission.

39.     Respondent MULLER did call MONAHAN, and then told Claimant that Respondent MONAHAN was upholding the termination.

40.     Respondent MONOHAN was the same supervisor who patently denied Claimant's request for accommodation to observe his religious services.

41.     Claimant's termination based on missing work was pretext for religious discrimination and Respondents not wanting to accommodate Claimant's requests.

42.     Claimant protested and stated that he had taken personal time to attend his services and that his personal time off had been accounted for in his time records.

43.     Claimant then contacted Respondent BROWN and informed her that he felt the termination was an unlawful discrimination for his requesting a religious accommodation.

44.     Respondent BROWN failed to investigate or take appropriate remedial action.

45.     In words and substance Respondent BROWN told Claimant that she was aware of his request for a religious accommodation, but that the accommodation had been denied.

SAVAGE 0149

46.     Further, Ms. BROWN insisted that Claimant had called out of work and was terminated for calling out.

47.     Claimant again stated that he had personal time to use and that he had approval from Respondent CASEY to use that time and attend services for his religious holiday.

48.     Nevertheless, Respondents unlawfully upheld Claimant's unlawful termination.

49.     Claimant then went to Respondents EEO office to make a report when Respondents Human Resources refused to conduct an investigation or to take appropriate remedial measures.

50.     Respondents EEO Office sent Claimant a letter, dated July 13, 2018, stating that they were closing the investigation, and copied the closing letter to Claimant's supervisors so that there could be continued conversation with Claimant's supervisors and human resources to address Claimant's concerns.

51.     Claimant to date, has still never been contacted by Respondents since he received the letter dated July 13, 2018.

52.     Respondents at all times failed to properly investigate or to take any remedial measures related to Claimant's multiple complaints of discrimination, harassment and hostile work environment.

53.     As Respondents' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Claimant demands Punitive Damages as against all the Respondents, jointly and severally.

54.      The above are just some of the examples of unlawful discrimination and retaliation to which the Defendants subjected the Plaintiff.

SAVAGE 0150

55.    Respondents have established a pattern and practice of discrimination in their

workplace.

Please contact me if you have any questions or require any additional information. Thank you for your courtesy and cooperation in the matter.

Very truly yours,

DEREK SMITH LAW GROUP, PLLC

Samuel C. Wilson, Esq.

9

SAVAGE 0151

EXHIBIT 2

1          THE WITNESS:  So based on his response, it

2     appears that he's flexible.  He offers to make up

3     the time.  But based on the conversation the

4     previous day, when we sat down and he initially

5     came to me, I had asked him a number of times, it's

6     got to be Delaware?  Got to be Delaware?  And he

7     said, it's got to be Delaware.

8          So that's -- you know, that's where I was

9     getting hung up, that it had to be Delaware and it

10     was -- it was very clear to me that there was no

11     give or take on that.

12   BY MS. KEESLER:

13   Q    So it seemed -- okay.

14          So is it fair to say that it appeared to you

15   there was no give or take with respect to the location

16   of where he attended services?

17   A    The location and the time for the services was

18   absolutely rigidly had to be Delaware.  And, you know --

19   Q    Did he -- did you ask him why it had to be

20   Delaware?

21   A    I don't think I asked him why, but -- I don't

22   recall.  Maybe I did.  I believe that my -- it's never a

23   concern to me why.  It's about trying to figure out how

24   to make it work.

EXHIBIT 3

1  maybe a month or so.  And I received an

2  e-mail from her advising me to go back to

3  the management at Temple, facilities

4  management and have a discussion and try to

5  get the disciplinary action modified I

6  believe the word were.

7          Q     Okay.

8              MR. MAVROUDIS:  Can we bring up

9      Savage-11.

10 BY MR. MAVROUDIS:

11         Q     Mr. Savage, I just brought up

12 here what has been marked as Ricky

13 Savage-11.  You see there's a serial number

14 there on the right.  That's the Bates number

15 Temple underscore Savage underscore 00326.

16 Do you see that?

17         A     Yes.

18         Q     Was this the letter that you

19 received from Tracey Hamilton?

20         A     That was a letter attached to

21 an e-mail.  Yes.

22         Q     A letter attached to an e-mail.

23 Okay.  And this was her investigation

24 closing notice?

RICKY SAVAGE                              252

```
1          A     Yes.

2          Q     Is this where she stated that

3    she recommended that you reach out to the

4    department; is that right?

5          A     I believe that might have been

6    in the e-mail itself.

7          Q     Okay.  You can take this down.

8    Did you reach out to the department?

9          A     No I did not.

10         Q     And why did you -- and why not?

11         A     Two big reasons.  Reason one

12   was just that phrase, the disciplinary

13   action being modified.  I was not in need of

14   modification of a disciplinary action,

15   because I felt I was wronged, I should not

16   have been disciplined, so why should it be

17   modified not resigned all together?  Second

18   thing was, I -- I -- after going through

19   what I went through I feared to be there

20   again under those hostile conditions, you

21   know.

22               In my mind, I imagined going

23   back and if I'm not wanted there, that I'm

24   terminated under some other, um, pretext, if
```